IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| vs. | * | |
| | | CASE NO. 4:95-cr-30 (CDL) |
| PIERRE J. CANNON, | * | |
| Defendant. | * | |

O R D E R

'Tis the season to get out of jail early. The former President, on his way out the door, commuted the sentences of thousands of federal prisoners, including several sentenced by the undersigned who had received lawful sentences for serious and dangerous criminal conduct. The incoming President issued hundreds of pardons and commutations before the paint was completely dry on the walls of the refreshed Oval Office. While the magnitude of these sentence reductions appears unprecedented, the Executive Branch does not have the monopoly on mercy and compassion. Congress within the last fifteen years has enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 and the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (hereinafter "FSA"). During that time, numerous retroactive amendments to the federal sentencing guidelines and statutory sentencing laws have been adopted, resulting in the reduction of thousands of sentences for federal prisoners. By recently

expanding the grounds for granting "compassionate release," Congress and the Sentencing Commission have created a pseudo-parole system within the Judicial Branch administered by district judges, federal magistrates and probation officers.[1] These new justifications for sentence reductions provide hope for prisoners who unsurprisingly respond with motions for compassionate release. The Defendant in this case has previously filed two such motions, both of which were denied. He now presents another one; and the third time may very well be the charm.

Presently pending before the Court is a recommendation from the Magistrate Judge dated November 19, 2024, that Defendant, who was lawfully convicted of armed robbery and carjacking, should have his sentence cut by approximately 65% based in part upon *nonretroactive* changes to the law under which he was sentenced. The Government objects to the recommendation. After a de novo review, the Court agrees in part and disagrees in part with the

---

[1] Parole for federal prisoners was first established in 1910. The parole system took on various forms through the years until it was finally abolished for most purposes by the Comprehensive Crime Act of 1984. The Comprehensive Crime Act also established the Sentencing Commission, which was directed to establish determinative sentencing guidelines. The effective date of the abolition of parole was November 1, 1992, to coincide with the implementation of the new sentencing guidelines. *See* Peter B. Hoffman, U.S. Dep't of Just., History of the Federal Parole System (which report can be found via the Department of Justice website). We now appear to have evolved to a determinative sentence guideline system with the opportunity for the reduction of those sentences if a federal prisoner can convince a single district judge that he is entitled to compassionate release pursuant to ever-increasing reasons established by the Sentencing Commission.

2

recommendation. As explained in the remainder of this order, the Court ultimately agrees that Defendant's motion for sentence reduction should be granted but not for the reasons stated in the Magistrate Judge's recommendation.

The Court divides its discussion into four parts: (1) a description of the applicable statutory framework; (2) background on Defendant's underlying convictions and his compassionate release litigation history; (3) an explanation of why the Court disagrees with part of the Magistrate Judge's rationale; and (4) a discussion of the Court's rationale for granting Defendant's motion for compassionate release.

## THE FEDERAL SENTENCING MODIFICATION SCHEME

The rule of law demands a degree of certainty and predictability when the government deprives a lawbreaker of his freedom through the imposition of a sentence of imprisonment. A carefully crafted sentencing framework has been established that enables a district judge to evaluate a wide variety of sentencing factors in the exercise of this important judicial function. Traditionally, those sentencing decisions have remained largely undisturbed, unless they were contrary to law or vacated by the Executive Branch through the pardon and commutation process. Congress made it clear that subsequent judicial modifications to a lawfully imposed sentence should be reserved for exceptional circumstances. *See* 18 U.S.C. § 3582(c) (a "court may not modify

3

a term of imprisonment once it has been imposed" except under limited circumstances). These exceptional circumstances have been expanded in recent years. They now include something described as "compassionate release." Compassionate release, until relatively recently, was typically based on a prisoner's personal circumstances such as age, health condition, and family situation. In 2023, the United States Sentencing Commission significantly expanded the reasons supporting compassionate release to include certain sentencing disparities and a more general catch-all to capture other non-enumerated extraordinary circumstances.

The compassionate release exception provides that a district judge "may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). This relief may be granted "upon motion of the defendant after the defendant has fully exhausted all administrative" remedies. *Id.* Congress left it to the Sentencing Commission to put meat on the bones of what constitutes "extraordinary and compelling reasons." It directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" in its "general policy statements regarding the sentencing modification

4

provisions" of the United States Code. 28 U.S.C. § 994(t). These policy statements were to include "the criteria to be applied and a list of specific examples," with the express limitation that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Thus, the Sentencing Commission's policy statements, with Congress's imprimatur, have become the grounds for modifying a previously imposed lawful sentence of imprisonment.

The Commission's policy statement for compassionate release requires a defendant to demonstrate that (1) an "[e]xtraordinary and compelling reason[] warrant[s] the reduction[,] [(2)] [that] . . . [he] is not a danger to the safety of any other person or to the community, . . . and [(3)] [that] . . . [t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(a). The policy statement then lists the reasons for reduction considered by the Commission to be extraordinary and compelling. U.S.S.G. § 1B1.13(b). In providing guidance for what constitutes an extraordinary and compelling reason for a sentence modification, the Commission initially established in its commentary tightly restricted circumstances to be considered for a sentence reduction: "terminal illness[;]" a "permanent physical or medical condition" or "deteriorating physical or mental health because of the aging process," which "substantially diminishes the ability of the defendant to provide self-care" in prison; "death

5

or incapacitation of the defendant's only family member capable of caring for" the defendant's minor child; and "*[a]s determined by the Director of the Bureau of Prisons*, . . . an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (i), (ii), and (iii)." U.S.S.G. § 1B1.13 cmt. n.1(A) (U.S. Sent'g Comm'n 2007) (emphasis added).

In 2023, the Sentencing Commission amended its policy statement on compassionate release, substantially expanding the circumstances which it considers to constitute potential extraordinary and compelling reasons for release. U.S.S.G. Suppl. to App. C, Amend. 814 (2023); U.S.S.G. § 1B1.13(b).  The policy statement now lists as extraordinary and compelling reasons the "[m]edical [c]ircumstances of the [d]efendant," the "[a]ge of the [d]efendant," the "[f]amily [c]ircumstances of the [d]efendant," and whether the defendant was a "[v]ictim of [a]buse" in prison. U.S.S.G. § 1B1.13(b)(1)-(4).  Relevant to Cannon's motion, the policy statement also considers extraordinary and compelling "any other circumstance[s] . . . that . . . are similar in gravity to those described in [subsections] (1) through (4)"  and "an unusually long sentence."  U.S.S.G. § 1B1.13(b)(5)-(6).

## THE DEFENDANT'S PREDICAMENT

In 1995, Defendant Pierre Cannon was found guilty by a jury of four counts of robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, five counts of use of a firearm during the commission of

6

a crime of violence in violation of 18 U.S.C. § 924(c), and one count of carjacking in violation of 18 U.S.C. § 2119. Indict. 1, ECF No. 4; Jury Verdict, ECF No. 17. Over the course of about three months, Cannon, who was 23 years old at the time,[2] participated in a crime spree that included robbing four retail establishments throughout the Middle District of Georgia at gunpoint and stealing a man's pickup truck at gunpoint. Indict. 1-8. Trial testimony established that Cannon kept a gun under his seat as he served as the getaway driver for these robberies. Trial Tr. Vol. II 53:13-18, ECF No. 24. The evidence established that his codefendants, who pled guilty and did not go to trial, held up the robbery victims at gunpoint while Cannon's conduct was limited primarily to the role of get-away driver. Before this robbery spree, Cannon had previously been convicted of criminal trespassing, robbery, aggravated assault, and criminal damage to property. Final Presentence Investigation Report 17, ECF No. 111.

At the time of Cannon's conviction and sentencing, 18 U.S.C. § 924(c) provided that a defendant convicted of a "second or subsequent" § 924(c) offense was subject to a minimum consecutive sentence of twenty years imprisonment even if the convictions of the first and second or subsequent § 924(c) offenses were obtained

---

[2] Cannon claims in his motion he was 22 at the time of these robberies, but the birth date given in his final presentence report indicates he was actually 23. Final Presentence Investigation Report 3, ECF No. 111.

7

in the same case. *See Deal v. United States*, 508 U.S. 129, 130-34 (1993) (explaining how § 924(c) worked at the time when multiple § 924(c) offenses were charged in the same case). This was known as the "stacking" provision, because the minimum consecutive twenty-year sentences "stacked" on top of each other in an action where a defendant was convicted of multiple § 924(c) offenses at one time. Cannon was sentenced to (1) 293 months for carjacking, (2) 240 months for each of the four Hobbs Act robbery charges to be served concurrently, (3) 60 months for his first § 924(c) charge to be served consecutively, (4) 240 months for each of his four remaining § 924(c) charges to be served consecutively, and (5) 60 months supervised release. J. 1-5, ECF No. 20. This resulted in a total imprisonment sentence of 1,313 months (109 years and 5 months)—essentially a life sentence for the 23 year-old get-away driver. *Id.* at 3. His codefendants, who arguably engaged in more violent and dangerous conduct, made plea deals with the Government which resulted in sentences of 240 months for one defendant and 300 months for the other. J. 2, *United States v. Rogers*, No. 4:95-cr-31-CDL-MSH (M.D. Ga. July 3, 1996), ECF No. 11; J., *United States v. Heard*, No. 4:95-cr-29-CDL-MSH (M.D. Ga. July 3, 1996), ECF No. 17. Quite a price—a difference of 1,013 months (84 years and 5 months)—for exercising one's right to a jury trial.

On appeal, the Eleventh Circuit Court of Appeals affirmed Cannon's convictions and sentence. *United States v. Cannon*, 112

8

F.3d 1172 (11th Cir. 1997). Following a retroactive amendment to the guidelines that applied in his case, Cannon's sentence was later reduced in 2010 to 1,171 months (97 years and 7 months)—still 72 years and 7 months longer than the longest sentence of his codefendants.

In 2018, Congress, as part of the FSA, eliminated the mandatory stacking provision of 18 U.S.C. § 924(c). FSA § 403(a). However, Congress did not make this amendment retroactive, specifying that it "shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*." *Id.* § 403(b) (emphasis added). Therefore, this dramatic change in the law did not benefit Cannon.

In July of 2020, Cannon filed his first motion for compassionate release. That motion was denied because Cannon failed to specify which of the Commission's listed extraordinary and compelling reasons supported his motion. He subsequently filed a more detailed motion in December of 2020. In that motion, he cited the following specific grounds for relief: (1) the risk posed by COVID-19, for which he had tested positive, and (2) that the "stacking" of his five § 924(c) convictions constituted an extraordinary and compelling reason for relief since the FSA eliminated the stacking provision. This motion was denied because Cannon was asymptomatic for COVID-19 and because at that time a

9

change in law that would result in a substantially lesser sentence was not listed in the Sentencing Commission's policy statement as an extraordinary and compelling reason supporting a sentence reduction. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding prior to the 2023 amendments that the policy statement as it existed then applied to defendant-filed motions for compassionate release). The Eleventh Circuit affirmed this denial of compassionate release. *United States v. Cannon*, No. 21-13570, 2022 WL 16570926 (11th Cir. Nov. 1, 2022) (per curiam).

After the Sentencing Commission added additional extraordinary and compelling grounds for sentence modification in 2023, Cannon filed the pending motion for compassionate release in June of 2024 based on these newly recognized grounds. First, he relies upon U.S.S.G. § 1B1.13(b)(6), which identifies certain unusually long sentences as a new extraordinary and compelling reason for relief. In the alternative, he relies upon U.S.S.G. § 1B1.13(b)(5), which provides a "catch-all" for extraordinary and compelling reasons that are of similar gravity to those reasons recognized as grounds for relief in subsections (b)(1)-(4) of the policy statement.

The Magistrate Judge recommended granting the motion based on subsection (b)(6) and accordingly did not consider Cannon's argument under subsection (b)(5). The Government objected to the Magistrate Judge's recommendation, and therefore, the Court

reviews Defendant's motion for sentence reduction de novo. It is undisputed that Defendant has exhausted his administrative remedies.

### U.S.S.G. § 1B1.13(b)(6)-UNUSUALLY LONG SENTENCE

The Sentencing Commission's current policy statement provides that extraordinary and compelling reasons may exist for a sentence reduction if the defendant has "received an unusually long sentence and has served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6).[3] The Commission's guidance further explains that the Court may consider "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) . . . in determining whether the defendant presents an extraordinary and compelling reason[;]" but, the court may only do so "where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." *Id.*

The Magistrate Judge determined that Cannon's guidelines range today would be 408-435 months (36 years and 3 months for top of range) compared to his current sentence of 1,171 months (97 years and 7 months). The Magistrate Judge concluded that this substantial disparity, along with her individualized assessment of

---

[3] Cannon has served 30 years of his 97-year sentence.

11

the sentencing factors found at 18 U.S.C. § 3553(a), supported her conclusion that extraordinary and compelling reasons existed to reduce Cannon's sentence.

This disparity between Cannon's sentence and what he would be subjected to today is certainly compelling. But is it extraordinary? The Congress that enacted the stacking provisions that were in effect at the time of Cannon's sentence obviously believed that they represented sound public policy. While a later Congress certainly has the prerogative to change that policy, doing so does not rise to the level of being extraordinary. Such legislative action is quite ordinary.

Furthermore, the Congress that made these changes to the former stacking provisions had the authority to make them retroactive. But it expressly chose not to do so. That decision too was not extraordinary. Such ordinary decisions happen with some regularity when Congress enacts changes to such legislation. *See Dorsey v. United States*, 567 U.S. 260, 280 (2012) (explaining that "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced."). Congress sometimes decides that sentencing changes should be applied retroactively. But here it did not, and the fact that disparities (even substantial ones) would exist between the sentences imposed prior to the new law and those imposed afterwards would be expected. In

fact, the changes were obviously made to make the sentence for this type of conduct less harsh. And the level of the disparity produced compared to the previously harsher treatment of the same conduct does not make their decision to apply it prospectively extraordinary. Thus, it is problematic to find extraordinary a disparity that results because Congress made a statutory change that it clearly concluded should not be applied retroactively. The Sentencing Commission recognizes this unremarkable proposition in its policy statement when it explains that a *nonretroactive* amendment to its own sentencing guidelines shall not be considered an extraordinary and compelling reason for a sentence reduction under § (b)(6). *See* U.S.S.G. § 1B1.13(b)(6). It would truly be extraordinary if a sentence could not be reduced based upon a disparity that results from a *nonretroactive* change to the sentencing guidelines, but a sentence could be reduced based upon a disparity that results from a *nonretroactive* change to a statute enacted by Congress. To do so would not only be inconsistent with the plain meaning of the word "extraordinary," but it would be tantamount to contravening the will of Congress by in effect converting their nonretroactive change in the law to a retroactive one. For all of these reasons, the Court finds that Cannon is not entitled to a reduction of his sentence based on U.S.S.G. § 1B1.13(b)(6).

The Court hastens to add that the Magistrate Judge can hardly be faulted for reaching a contrary conclusion.  It appears that nearly every district judge who has considered this precise issue in the Eleventh Circuit, including judges from this District, have reached the same conclusion as our able Magistrate Judge.  *See e.g.*, *United States v. Williams*, No. 5:94-cr-39, 2024 WL 4189735, at *3 (M.D. Ga. Sept. 13, 2024); *United States v. Clowers*, No. 5:92-cr-82, 2024 WL 3461752, at *4 (M.D. Ga. July 18, 2024).  The Court, however, is not completely out on the proverbial limb alone.  At least one circuit appeals court has reached the same conclusion as the undersigned under circumstances almost identical to those presented here.  *See United States v. Rutherford*, 120 F.4th 360, 376 (3d Cir. 2024) (finding that applying subsection (b)(6) to the FSA's modification of § 924(c) conflicts with the will of Congress that this change be nonretroactive).

U.S.S.G. § 1B1.13(b)(5)—"THE CATCH-ALL"

Subsection (b)(5) provides a "catch-all" for granting compassionate release when the circumstances may not fit neatly within one of the specific categories listed in the Sentencing Commission policy statements.  This catch-all recognizes that there may be circumstances that are "similar in gravity" to the other specifically stated circumstances  (i.e., "[m]edical [c]ircumstances of the [d]efendant," the "[a]ge of the [d]efendant," the "[f]amily [c]ircumstances of the [d]efendant,"

14

and whether the defendant was a "[v]ictim of [a]buse" in prison). U.S.S.G. § 1B1.13(b)(1)-(5).[4] The Sentencing Commission has thus left the door open for a compassionate release where the circumstances rise to a similar level of "extraordinariness."

This "catch-all" exception to the fundamental principle that lawful sentences should not be disturbed must be applied sparingly. Otherwise, there is a substantial risk that a judge's individual compassion untethered to the rule of law will result in the exception swallowing the rule. The restriction on the judge's unbridled discretion is that the "catch-all" circumstances must be as extraordinary and compelling as those circumstances specifically stated by the Commission in its policy statement.

The Court finds that under the limited circumstances here, the disparity of Cannon's sentence compared to that of his codefendants is of similar gravity to warrant a reduction of his sentence. Here, Cannon suffered a substantial penalty by exercising his constitutional right to require the Government to prove his guilt beyond a reasonable doubt to the satisfaction of a unanimous jury. As previously explained, Cannon, as the 23-year-old get-away driver, received a sentence of 1,313 months (109 years and 5 months)—essentially a life sentence for a young man

---

[4] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons[,]" instead deciding that "they need be similar only in gravity." U.S.S.G. Suppl. to App. C at 207, Amend. 814 (2023).

four years removed from being a teenager.[5] Although his conduct was serious and facilitated the criminal conduct of his codefendants, his personal conduct was primarily limited to driving the get-away vehicle. While a gun was found under the seat of his car, the evidence did not indicate that he ever discharged the gun. No one was physically harmed as a result of his conduct in driving the car. At the time of his sentencing, he had a criminal history category of III. Under later retroactive amendments to the sentencing guidelines, his criminal history category would be considered category II. His codefendants, who arguably engaged in more violent and dangerous conduct by entering the targeted establishments of the robberies and actually holding up the victims at gunpoint, made plea deals with the Government which resulted in sentences of 240 months for one defendant and 300 months for the other. J. 2, *United States v. Rogers*, No. 4:95-cr-31-CDL-MSH (M.D. Ga. July 3, 1996), ECF No. 11; J., *United States v. Heard*, No. 4:95-cr-29-CDL-MSH (M.D. Ga. July 3, 1996), ECF No. 17. Their criminal histories placed them in criminal history categories IV and VI, respectively. J. 6, *United States v. Rogers*, No. 4:95-cr-31-CDL-MSH (M.D. Ga. July 3, 1996), ECF No.

---

[5] Cannon's sentence was later reduced by a retroactive change in the law to a sentence of 1,171 months (97 years and 7 months)—still a life sentence and 871 months (72 years and 7 months) longer than his codefendant who received the next longest sentence.

11; Final Presentence Investigation Report 13, *United States v. Heard*, No. 4:95-cr-29-CDL-MSH (M.D. Ga. July 3, 1996), ECF No. 44.

The Court understands that sentence disparities between codefendants are often ordinary. But when that disparity is as large as it is here and when the criminal conduct of the defendant who received the substantially higher sentence was clearly less dangerous than that of his codefendants, such circumstances may rise to extraordinary. The Court also observes that this disparity could not realistically be addressed by the sentencing judge. Once Cannon was found guilty by the jury, the resulting consecutive sentences became mandatory. Thus, the sentencing judge's hands were tied.

Cannon paid quite a price, a difference of 1,013 months (84 years and 5 months), for exercising his constitutional right to a jury trial. Losing a couple level reduction in your offense level by not accepting responsibility is understandable; receiving a sentence four to five times greater than your similarly situated (and arguably more culpable) co-defendants is extraordinary. His trial gamble (which was his fundamental right to take) cost him the rest of his life without freedom. The gravity of this extraordinary disparity is certainly similar to the gravity of

17

those circumstances specifically listed by the Commission as factors to consider in granting compassionate release.[6]

As to the other factors that the Court must consider, the Court adopts the Magistrate Judge's findings regarding Cannon's rehabilitation, his lack of danger to the community and her analysis of the § 3553(a) factors, which support Cannon's motion for compassionate release.[7] Based on the Defendant's age at the time he committed the offense, the extraordinary disparity in the sentence he received compared to his codefendants, his rehabilitation while in prison, the amount of time he has served on his sentence, his lack of danger to the community, and an analysis of the sentencing factors found at 18 U.S.C. § 3553(a), the Court finds that Defendant's sentence shall be reduced pursuant to U.S.S.G. § 1B1.13(b)(5).[8]

---

[6] The Court emphasizes that it will be the rare case that a disparity in the sentences of codefendants will rise to the level of extraordinary and compelling. But the Court finds this is such a case.

[7] The Court acknowledges that, in 2021, it adopted a report from the then-Magistrate Judge that included dicta analyzing the § 3553(a) factors and reaching a conclusion different than the one the current Magistrate Judge reaches in her recommendation. The Court notes that the Magistrate Judge's evaluation of the § 3553 factors in the previous motion was not essential to the Court's decision there. Furthermore, circumstances, including the Defendant's rehabilitation efforts, have changed in the last several years. And perhaps most importantly, the Court is simply more persuaded by the current Magistrate Judge's evaluation of those factors based on the current circumstances than the stale recommendation from nearly four years ago.

[8] A superficial review of today's decision may lead to the careless conclusion that the Court has allowed indirectly through subsection (b)(5) what it prohibited directly through subsection (b)(6). The important distinction is that the Court found that the disparity between Cannon's sentence *and the sentences of his codefendants*, whose criminal conduct was more dangerous, was extraordinary under the circumstances,

CONCLUSION

After a de novo review, the Court rejects in part and adopts in part the Magistrate Judge's recommendation (ECF No. 188). Defendant's motion for compassionate release (ECF No. 181) is granted for the reasons stated in today's order. The Court reduces Cannon's sentence of imprisonment to TIME SERVED through 90 days from the date of today's order, meaning that he should be released no sooner than 90 days after today's order.[9] The other parts of Cannon's previous sentence and judgment, including those related to supervised release, shall remain unchanged.

IT IS SO ORDERED, this 29th day of January, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

whereas the disparity between Cannon's sentence *and the sentence he would have received if sentenced thirty years later* is not extraordinary in light of Congress's intention that the change that produced the disparity not be applied retroactively.

[9] Cannon's reduced sentence is equivalent to a pre-good time credit sentence of approximately 415 months, which is still 115 months greater than the longest sentence received by his codefendants.